IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Maurice Shaundell Hope, # 292285, | ) |
| | ) |
| Petitioner, | ) Civil Action No. 6:14-3571-RBH-KFM |
| | ) **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) |
| | ) |
| Warden Cartledge, | ) |
| | ) |
| Respondent. | ) |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

## BACKGROUND

The petitioner is currently incarcerated in the Perry Correctional Institution of the South Carolina Department of Corrections. The petitioner was indicted by the York County Grand Jury in June 2008 on one count of Kidnapping (Indictment No. 2008-GS-46-2158), one count of Possession of a Firearm During the Commission of a Violent Crime (Indictment No. 2008-GS-46-2159), one count of Criminal Conspiracy to Commit Armed Robbery (Indictment No. 2008-GS-46-2157), and one count of Armed Robbery (Indictment No. 2008-GS-46-2156) (app. 352–59). The petitioner was represented by David Sample. The State was represented by Assistant Solicitors E. B. Springs, IV, and Christopher Epting, both with the Sixteenth Judicial Circuit Solicitor's Office (app. 1–287).

The petitioner proceeded to trial by jury before the Honorable John C. Hayes, South Carolina Circuit Judge, on September 9–10, 2008. On September 10, 2008, the petitioner was found guilty of all four charges (app. 279–80). Judge Hayes sentenced the petitioner to thirty years on the kidnapping and armed robbery convictions and to five years on the firearm and conspiracy convictions, all to be served concurrently (app. 285).

# **FACTS**

*Trial*

According to the trial testimony in this case, on January 1, 2008, at approximately 7:00 a.m., Bi-Lo Marketing Manager Billy Patton was working at a Bi-Lo in Rock Hill, South Carolina. He observed two individuals wearing ski masks and carrying guns come into the store. One of the men held a gun on the store manager, Don Blair, while the other held the bookkeeper, Dana DeRose, at gunpoint (app. 73–76, 102).

Ms. DeRose testifed that a masked man held a gun to her face and demanded that she give to him the keys to the cash drawer in her office. She complied and got down on the floor while the robber emptied the cash drawer into a dark bag (app. 85–86, 88). The other gunman ordered Mr. Blair to sit down while the other gunman was with Ms. DeRose (app. 94–97).

The petitioner's co-defendant, Corey Spruell, testified that he went to the Bi-Lo that morning and got money out of the cash drawer while the petitioner made the store employees stay in one place. Spruell stated that another co-defendant, Jarrod Heath, waited in the car outside and drove them away when they finished robbing the store (app. 102–04). Heath, Spruell's brother, testified that he heard Spruell and the petitioner discussing the robbery before it took place, and he knew that it would happen on New Year's Day. He was designated as the getaway car driver. He stated that he drove the car to the Bi-Lo the morning of the robbery and waited until Spruell and the petitioner came out with the money (app. 107–11).

During the trial, the petitioner's wife also testified. She stated that the petitioner was with her and her friends at a New Year's Eve party at 12:15 a.m. the night before the robbery and that he stayed with her until 8:00 a.m. the next morning (app. 124–27). Four other witnesses and the petitioner corroborated his wife's testimony during the trial (app. 144–203).

***Direct Appeal***

On September 19, 2008, the petitioner filed and served a Notice of Appeal. On appeal, the petitioner was represented by Wanda H. Carter, Deputy Chief Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense. The petitioner's appeal was perfected with the filing of a Final *Anders* Brief of Appellant. *Anders v. California*, 386 U.S. 738 (1967). The petitioner did not file a *pro se* response to the *Anders* Brief. On November 3, 2010, the South Carolina Court of Appeals dismissed the petitioner's appeal. *State v. Maurice Shaundel Hope*, Unpublished Opinion No. 2010-UP-480 (S.C.Ct.App. Nov. 3, 2010). In the opinion, the Court of Appeals also noted that the petitioner appealed the revocation of his probation, arguing the trial court erred in revoking his probation without an evidentiary hearing. The Remittitur was issued on December 2, 2010.

***PCR***

On September 1, 2011, the petitioner filed an Application for Post-Conviction Relief (Case No. 2011-CP-46-3357), asserting claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel (app. 288–94). Specifically, the petitioner asserted trial counsel was ineffective for failing to properly investigate and prepare for trial; failing to call witnesses relevant to the defense theory of the case; failing to argue and preserve legal issues for appellate review; failing to properly investigate, present evidence, cross-examine, and make a motion to suppress the evidence; and failing to challenge striking of the panel (app. 294). The petitioner also claimed appellate

counsel was ineffective for failing to properly research the case and present proper issues (*id*.). The State served its Return on April 6, 2012 (app. 295–301).

An evidentiary hearing was held on October 10, 2012, before the Honorable Edgar W. Dickson, South Carolina Circuit Judge. The petitioner was present and was represented by Phillip Jamieson. The State was represented by Assistant Attorney General Rutledge Johnson (app. 303–41).

During the hearing, the petitioner testified that he met with trial counsel three times while in custody as he was denied bond. He stated that the State made two plea offers. The first offer was for a fourteen-year sentence, and the second offer was for an eleven-year sentence (app. 308). The petitioner decided to reject both of these offers because the prison time exceeded the combined prison time for his co-defendants (*id*.). The petitioner testified that, when he met with counsel the second time, that counsel did not review discovery or discuss trial strategy (app. 308–09). The petitioner testified that on the third visit, counsel gave him copies of his arrest warrant and the search warrant (app. 309). He also stated counsel did not give him copies of the co-defendants' statements until after the trial (app. 308–09). However, the petitioner's main contention was that he believed trial counsel was ineffective for failing to request an alibi charge (app. 315–17). The petitioner testified the alibi defense was his only defense, and he provided all of the names of the witnesses to subpoena and call on his behalf at trial, yet counsel did not subpoena all of the witnesses he wanted (app. 310–17). Specifically, the petitioner stated Tara Retzer's testimony, who was a co-defendant's girlfriend, would have exonerated him by showing that his co-defendants set him up as a participant in the robbery. Ms. Retzer did not testify at the PCR hearing (app. 311).

On cross-examination, the petitioner admitted Ms. Retzer was not present to testify at his PCR hearing (app. 317–18). The petitioner also stated he knew what the definition of an alibi is even without any legal training and that an alibi was a defense used

4

to show that he was not present when the crime occurred (app. 318). The petitioner further admitted that apparently the jury did not believe his testimony at trial as he was convicted of these crimes (app. 319–20).

Trial counsel testified he met with the petitioner four times, with the last meeting being the longest and the most thorough in preparation for trial (app. 320–21). At the fourth meeting, trial counsel stated he explained his trial strategy to the petitioner and that he was adequately prepared for trial (app. 321). Trial counsel also stated that he attempted to locate Ms. Retzer, but did not subpoena or interview her (app. 323). Moreover, counsel testified he believed Ms. Retzer's testimony would have been more favorable to the State as she was a co-defendant's girlfriend (*id*.). This particular co-defendant testified against the petitioner at trial (app. 321–24).

At the PCR hearing, trial counsel testified that he presented six alibi witnesses on the petitioner's behalf because an alibi defense was the petitioner's only defense (app. 325). Counsel further testified the evidence against the petitioner at trial included a videotape, which showed a person very closely resembling the petitioner, and co-defendants' statements and testimony, which implicated the petitioner (app. 326). Counsel admitted that he did not request an alibi charge in this case, nor did the trial judge give the jury an alibi charge (app. 327). On cross-examination and re-direct examination, counsel stated the jury understood what an alibi defense is, but that it was possible that the jury would have better understood if it had been given an alibi charge (app. 332–33). Both Christian Hope and Kendra Gordon testified they met with counsel briefly before trial to discuss their testimony as alibi witnesses. (app. 334, 336, 337).

On August 28, 2013, the PCR court filed an Order of Dismissal (app. 342–51). In the order, the PCR court noted that it had observed the witnesses at the PCR hearing and found that trial counsel was not ineffective for failing to interview or to subpoena witnesses on the petitioner's behalf. The court noted that the petitioner failed

to produce any evidence at the PCR hearing of how these witnesses' testimony would have changed the outcome of his trial or how he was prejudiced by counsel's alleged ineffectiveness (app. 347).

Additionally, the PCR court found counsel may have been ineffective for failing to ensure that an alibi instruction was given to the jury and, thus, his conduct fell below the reasonable professional standard (app. 347). The PCR court found that, had a jury instruction on alibi been requested, the trial court would have been required to deliver such a charge because it was supported by evidence presented at trial. *See State v. Burriss*, 513 S.E.2d 104, 108 (S.C. 1999) (trial court must give requested charge if it is supported by evidence). However, the PCR court found that the petitioner had not proven that he was prejudiced from the lack of an alibi charge because alibi testimony was presented to the jury, and both attorneys discussed the issue in their closing arguments. Furthermore, the trial court also specifically charged the jury on the petitioner's presumption of innocence, judging the credibility of witnesses, and the State's burden of proof of beyond a reasonable doubt (app. 264, 266, 268–72).

The PCR court found that this charge was sufficient to inform the jury that the State had to prove beyond a reasonable doubt that the petitioner was not at home at the time of the crime and that he committed the crime. In addition, in this particular case, because the jurors could believe *either* the State's identification witnesses (co-defendants), *or* they could believe the alibi witnesses, *but not both*, the PCR court found that the crucial issue in this case was credibility. Witness credibility was argued by both sides and was thoroughly charged to the jury (app. 349). The PCR court found that the case of *Ford v. State*, 442 S.E.2d 604 (S.C. 1994), supported the notion that even where counsel is ineffective for failing to ensure an alibi charge is given, there is a lack of the required prejudice if there is not a reasonable probability that the outcome of trial would have been different had an alibi charge been given. The PCR court ultimately

concluded that, absent any evidence to the contrary, the petitioner's alibi witness testimony must have been given little or no weight by the jury and therefore was not convinced that an alibi charge request by counsel would have affected the outcome of the petitioner's trial (app. 349–50). Accordingly, this allegation was dismissed (app. 350).

The petitioner also alleged in his application and at the evidentiary hearing that counsel was ineffective for failing to prepare and investigate this case, failure to make a motion to suppress the evidence, and failing to challenge a striking of the jury panel, as well as ineffective assistance of appellate counsel. With respect to these claims, the PCR court found the petitioner failed to meet his burden by failing to produce evidence sufficient to show how the trial's outcome would have been different had counsel objected or challenged the above issues or that appellate counsel was deficient (app. 350). The petitioner also failed to show how these alleged deficiencies prejudiced his trial; therefore, these allegations were denied, and his petition was dismissed *with prejudice* (app. 350–51).

### *PCR Appeal*

The petitioner timely filed a Notice of Appeal on September 10, 2013, and served the respondent on September 12, 2013. On appeal, the petitioner was represented by Benjamin John Tripp, Appellate Defender with the Commission on Indigent Defense, Division of Appellate Defense . The petitioner's appeal from the denial of relief by the PCR court was perfected with the filing of a *Johnson* petition for writ of certiorari, which is South Carolina's equivalent of an *Anders* brief (doc. 15-10). *See Johnson v. State*, 364 S.E.2d 201, 201 (S.C. 1988) (*per curiam*) ("This Court has approved the withdrawal of counsel in meritless post-conviction appeals, provided the procedures outlined in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), were followed."). In the *Johnson* petition, counsel argued the petitioner suffered prejudice from trial counsel's deficient failure to secure an alibi charge because, based on the inconclusive witness testimony presented, the jury needed a specific instruction

that the State had to prove the petitioner was at the scene of the robbery beyond a reasonable doubt.

The petitioner filed a *pro se* response to the *Johnson* petition (doc. 15-12). In his response, the petitioner asserted he suffered prejudice from trial counsel's failure to prepare and investigate this case when he failed to investigate Tera Retzer, a witness who could have exonerated him (*id.* at 1–6).

On July 11, 2014, the South Carolina Supreme Court issued its order denying the petition for writ of certiorari and granted counsel's request to withdraw (doc. 15-13). The Remittitur was issued on July 29, 2014 (doc. 15-14).

## FEDERAL PETITION

On September 12, 2014, the petitioner filed his § 2254 petition (doc. 1). On November 17, 2014, the respondent filed a motion for summary judgment (doc. 16). By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to respond adequately to the motion (doc. 17). After receiving an extension of time, the petitioner on January 14, 2015, filed his response in opposition (doc. 23).

In his federal habeas petition, the petitioner makes the following claims:

**Ground One: Ineffective Assistance of Counsel**

Supporting facts: see attached statement of facts in support (numerous deficiencies).

(Doc. 1 at 6).

In his attached statement of facts in support, the petitioner asserts as follows:

> Petitioner was denied Effective Assistance of Counsel and suffered prejudice from counsel's deficient performance when counsel failed to secure an alibi jury instruction, and that failure precluded the jury from even considering alibi as an

> alternative verdict and the lack of alibi instruction denied petitioner a complete defense.

(Doc. 1-1 at 2).

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id*. at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Exhaustion***

The respondent acknowledges that the one ground for relief alleged by the petitioner is exhausted as it was raised and ruled upon by the PCR court and was appealed in the *Johnson* petition, which was denied by the South Carolina Supreme Court (doc. 15 at 17). Accordingly, the issue will be reviewed on the merits.

***Merits***

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating

11

> unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

In his sole ground for relief, the petitioner renews his claim of ineffective assistance of counsel that he raised at PCR and in his PCR appeal – that trial counsel was ineffective in not securing an alibi jury instruction at his trial. The PCR court denied relief upon this claim, finding the petitioner had not established that he was prejudiced by the deficiency of counsel in not requesting the alibi instruction.

The petitioner cannot show that the PCR court's denial of relief was based upon an unreasonable determination of the facts. The petitioner testified that the alibi defense was his only defense, and that he provided all of the names of the witnesses to subpoena and call on his behalf at trial, but that counsel did not subpoena all of the witnesses he wanted (app. 310–14). Specifically, the petitioner stated Tara Retzer's testimony, who was a co-defendant's girlfriend, would have exonerated him by showing that his co-defendants set him up as a participant in the robbery (app. 311–13). However, Ms. Retzer did not testify at the PCR hearing (app. 303–41). As noted above, trial counsel presented six alibi witnesses on the petitioner's behalf because this was his only defense. Counsel further testified the evidence against the petitioner included a videotape showing someone closely resembling the petitioner, as well as co-defendants' statements and testimony implicating petitioner in the robbery. Counsel admitted that he did not request an alibi charge nor was one given by the court (app. 325, 326–28). He stated that it was possible that the jury may have better understood what an alibi defense was if they had been given the charge (app. 331, 333).

After considering the testimony at the PCR hearing, the court found that alibi testimony was presented to the jury, that both attorneys discussed the issue in their closing arguments, and that the trial court's instructions were sufficient to inform the jury

that the State had to prove beyond a reasonable doubt that the petitioner was not at home at the time of the crime, and that he committed the crime (app. 123–28, 144–48, 156–61, 175–78, 189–92, 202–04, 249–50, 253, 257–58, 259, 264, 266–73).  The PCR court also noted that witness credibility was argued by both sides and was included in the trial court's charge (app. 245–51, 255–60, 266–67).

The petitioner also cannot show the PCR court unreasonably applied federal law in denying relief upon this claim as the PCR court reasonably applied the *Strickland* standard (app. 345–46, 347–50).  The PCR court's denial of relief was based upon its determination that the petitioner was not prejudiced by trial counsel's failure to request an alibi instruction.  As noted by the PCR court, the jury charge that was given adequately protected the petitioner's rights in that it emphasized repeatedly the necessity that the jury must find that petitioner committed the crime beyond a reasonable doubt, and its emphasis on the jury's role in assessing the credibility of the witnesses.

Further, the PCR court's determination that the result would not have been different had an alibi charge been given was reasonable, especially when viewed in light of the comparisons to other South Carolina cases the court examined.  The PCR court noted that the petitioner's situation was analogous to the situations presented in *Ford v. State*, 442 S.E.2d 604 (S.C. 1994), and *Gibbs v. State*, 744 S.E.2d 170 (S.C. 2013).

In *Ford*, the State had presented direct evidence establishing the defendant was at the crime scene, along with other circumstantial evidence. 442 S.E.2d at 606. The PCR court in *Ford* ruled that the trial counsel's rejection of an alibi defense did not constitute a deficient performance. The Supreme Court of South Carolina found the PCR court erred and held that the trial counsel's rejection of an alibi defense was, in fact, a deficient performance under *Riddle v. State*, 418 S.E.2d 308, 309–10 (S.C. 1992), but found that Ford was not prejudiced because "overwhelming" evidence supported the finding of guilt:

> The evidence at trial established that the genetic systems in Ford's DNA matched the genetic systems extracted from the

13

> semen found on the victim's clothing, that Ford's blood type matched the perpetrator's, that Ford and Fraser were overheard planning the assault, and that Fraser was in possession of a wallet containing Ford's identification immediately after the assault. In light of this overwhelming evidence of Ford's guilt, we find no reasonable probability that the result of the trial would have been different had counsel accepted the alibi charge.

*Ford*, 442 S.E.2d at 606.

Similarly, in *Gibbs*, two eyewitnesses identified the defendant as the perpetrator of an armed robbery, and other evidence corroborated that he was present at the robbery. The PCR court in *Gibbs* found a deficient performance with respect to trial counsel's failure to request an alibi instruction, but concluded that Gibbs was not prejudiced: "Given the clarity of the jury charge requiring the State to prove identity beyond a reasonable doubt, the PCR court's finding of no prejudice must be sustained under the any evidence standard of review." *Gibbs*, 744 S.E.2d at 176.

The same was true in the petitioner's case. *Ford* and *Gibbs* indicate that direct evidence showing that a criminal defendant was present at the scene of the crime will vitiate an alibi defense. The petitioner's co-defendants testified that the petitioner was present and participated in the robbery of the Bi-Lo store. Further, the State presented substantial circumstantial evidence, *i.e.*, a videotape that showed the petitioner (or an individual who, coincidentally, looked remarkably similar to the petitioner) was at the scene of the robbery. In light of the jury instruction that was given and substantial evidence of the petitioner's guilt, it was not unreasonable for the PCR court to find that, under *Gibbs*, 744 S.E.2d at 176 (proof beyond reasonable doubt jury instruction sufficient even if no alibi instruction given), the petitioner was not prejudiced by counsel's failure to request an alibi jury instruction.

Relatedly, many state and federal jurisdictions have adopted rules requiring defendants to give notice of an alibi defense. *See Williams v. Florida*, 399 U.S. 78, 85 (1970) ("In the case before us, the notice-of-alibi rule by itself in no way affected

14

petitioner's crucial decision to call alibi witnesses or added to the legitimate pressures leading to that course of action. At most, the rule only compelled petitioner to accelerate the timing of his disclosure, forcing him to divulge at an earlier date information that the petitioner from the beginning planned to divulge at trial.") (holding that a criminal defendant may be compelled to disclose the substance of an alibi defense prior to trial or be barred from asserting it). *See also* Fed. R. Crim. P. 12.1 (Notice of an Alibi Defense).

Neither the United States Court of Appeals for the Fourth Circuit nor the Supreme Court of the United States have held that failure to file a Notice of Alibi defense constitutes ineffective assistance of counsel. Moreover, the United States Court of Appeals for the Fourth Circuit, in an unpublished opinion, reversed this district court's grant of a habeas petition with respect to the failure of a trial counsel to file a notice of alibi defense. *See Boseman v. Bazzle*, No. 08-7813, 364 F. App'x 796 (4th Cir. Feb. 9, 2010) ("The PCR court concluded that trial counsel exercised reasonable professional judgment regarding his decision not to present the alibi witnesses. In light of *Strickland*'s analysis of what constitutes reasonable performance as well as the deferential review afforded such state court decisions, we do not find error in the PCR court's conclusion. Accordingly, we also hold that the district court erred in concluding the PCR court's decision was contrary to or an unreasonable application of *Strickland*'s performance prong"), *reversing* Civil Action No. 0:07-1344-DCN, 2008 WL 3850703 (D.S.C. July 24, 2008).[1]

In cases where a state court considered and denied a claim on its merits, a federal habeas court may grant habeas relief only if the state court decision was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented

---

[1] On remand from the Court of Appeals, this district court in *Boseman* found that the ground relating to the failure to file a Notice of Alibi defense was procedurally barred. *Boseman v. Bazzle*, Civil Action No. 0:07-1344-DCN, 2011 WL 4808189, at *4 (D.S.C. Oct. 11, 2011).

in the State court proceedings." 28 U.S.C. § 2254(d)(1) and (d)(2). A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court's decision involves an unreasonable application of federal law when the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a particular] case," or "applies a precedent in a context different from the one in which the precedent was decided and one to which extension of the legal principle of the precedent is not reasonable [or] fails to apply the principle of a precedent in a context where such failure is unreasonable." *Robinson v. Polk*, 438 F.3d 350, 355 (4th Cir. 2006). "The state court's application of clearly established federal law must be 'objectively unreasonable,' for a 'federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly.'" *Jackson v. Johnson*, 523 F.3d 273, 277 (4th Cir. 2008) (quoting *Williams v. Taylor*, 529 U.S. at 409). The Supreme Court of the United States has not held that a failure to file a Notice of Alibi defense constitutes a deficient performance. As a result, the PCR court's decision cannot be said to be the result of unreasonable application of the performance or prejudice prongs of the *Strickland* test. *See Woods v. Donald*, 135 S.Ct. 1372, 1374–78 (2015).

The petitioner has failed to show that the PCR court made an unreasonable determination of the facts in denying relief upon this claim of ineffective assistance of counsel. Furthermore, the petitioner has failed to show the PCR court unreasonably applied federal law in denying relief upon this claim. Accordingly, the petitioner is not entitled to federal habeas relief under 28 U.S.C. § 2254(d), and the claims in Ground One should be denied.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 16) be granted. It is also recommended that the District Court deny a certificate of appealability. The attention of the parties is directed to the Notice on the next page.

s/ Kevin F. McDonald<br>
United States Magistrate Judge

June 15, 2015
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court
United States District Court
300 East Washington Street — Room 239
Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).